

# Missouri Court of Appeals
## Southern District

### In Division

KATHERINE C. BOWDEN and )
DOUGLAS D. BOWDEN, by and )
through Plaintiffs Ad Litem, )
KATHERINE L. BOWDEN and )
DAVID BOWDEN, JR., )
)
    Plaintiffs-Appellants, )
)
v. ) No. SD37193
)
AMERICAN MODERN HOME ) **Filed: October 25, 2022**
INSURANCE COMPANY, )
)
and )
)
BARTON MUTUAL INSURANCE )
COMPANY, )
)
    Defendants-Respondents. )

APPEAL FROM THE CIRCUIT COURT OF SHANNON COUNTY

Honorable Christina L. Kime

**REVERSED AND REMANDED**

In six points on appeal, Katherine L. Bowden and David Bowden, Jr.

("Plaintiffs") appeal the circuit court's grant of summary judgment in favor of Barton

Mutual Insurance Company ("Defendant Barton") and American Modern Home

Insurance Company ("Defendant American Modern") (collectively, "Defendants") on

1

Plaintiffs' action for breach of contract. Finding merit in Plaintiffs' first and fourth points, which claim that Defendants failed to make a *prima facie* showing of a right to summary judgment, we reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

**Background**

On or about January 22, 2010, Defendant Barton issued a homeowners' policy of insurance ("the Policy") to Sarah Feldbaumer, insuring a dwelling located in Mountain View ("the Property"). The Policy listed The Bank of Birch Tree ("the Bank") as the named "mortgagee"[1] on the Declarations Page. On or about October 13, 2011, the Property was destroyed by fire.

At the time of the fire, the Property was owned by Sarah Feldbaumer and secured by a mortgage held by the Bank. Defendant American Modern had also issued a Blanket Mortgage Security Policy ("the Security Policy") that was in effect at that time. After the Property burned, the Bank claimed insurance coverage from Defendants, and each denied coverage.

On May 11, 2012, approximately seven months after the Property was destroyed by fire, Douglas D. Bowden and Katherine C. Bowden[2] entered into a Note Purchase Agreement with the Bank to buy the promissory note and deed of trust to the Property for $161,037.31.[3]

---

[1] The briefs sometimes refer to a "mortgage" and at other times to a "deed of trust." The actual mechanism used to secure the note at issue does not affect our analysis, and we will likewise use the terms interchangeably.

[2] Douglas D. Bowden and Katherine C. Bowden were Sarah Feldbaumer's grandparents, whose interests are now represented by Plaintiffs as plaintiffs *ad litem*.

[3] Months after the fire, the Bank was purchased by Landmark Bank, and the note at issue was acquired by Sarah Feldbaumer's grandparents at Landmark's request.

This litigation for breach of contract ensued when Defendants continued to refuse to cover the loss. Plaintiffs filed a two-count petition for breach of contract -- Count 1 against Defendant Barton and Count 2 against Defendant American Modern.

Defendant Barton sought summary judgment on the ground that Plaintiffs were not entitled to any insurance proceeds because the Policy "contained provisions prohibiting the assignment of the Policy without the consent of [Defendant Barton] [and n]o such consent was granted in this case." Defendant Barton further complained that it was not made aware of any attempted assignment until seven years after the fact. Defendant American Modern then filed for summary judgment on the ground that the Note Purchase Agreement did not transfer the Security Policy or its proceeds to Plaintiffs.

The circuit court granted summary judgment in favor of Defendant Barton on the ground that "the 'Note Purchase Agreement' between [the Bank] and [Plaintiffs] did not assign any rights to the insurance proceeds from [the Policy.]" The circuit court later granted summary judgment in favor of Defendant American Modern without stating a basis for the ruling.

**Analysis**

*Points 1 & 4*

Plaintiffs' first and fourth points claim the circuit court erred in entering summary judgment on Plaintiffs' breach of contract claims against Defendants because their respective motions for summary judgment failed to make a *prima facie* case that negated any essential element of Plaintiffs' breach of contract claim or established the existence of any affirmative defense. We agree.

3

*Standard of Review and Summary-Judgment Requirements*

The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo.* In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

....

The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion.

*Green v. Fotoohighiam*, 606 S.W.3d 113, 115-16 (Mo banc. 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011)) (internal quotation marks and citations omitted).

Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework. Courts determine and review summary judgment *based on that Rule 74.04(c) record, <u>not</u>* the whole trial court record. Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.* [. . .] [S]ummary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*

*Fotoohighiam*, 606 S.W.3d at 117-18 (quoting *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. S.D. 2016)) (emphasis in original) (internal footnotes and

quotation marks omitted). Thus, we look solely to the uncontroverted facts, as established via Rule 74.04(c)[4] paragraphs and responses, to determine whether Defendants have demonstrated a right to judgment in their favor as a matter of law. *See Fotoohighiam*, 606 S.W.3d at 118.

The first determination to be made is whether a party moving for summary judgment is a "claimant" or a "defending party[.]" *Great S. Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 828 (Mo. App. S.D. 2016). Here, each defendant is a "defending party," and each claims that its Statement of Uncontroverted Material Facts ("SUMF") negated the second necessary element[5] of Plaintiffs' breach-of-contract claim -- that Defendants owed an obligation to Plaintiffs under their respective insurance policies. *See State ex rel. Nixon v. Hughes*, 281 S.W.3d 902, 906-07 (Mo. App. W.D. 2009).

The relevant portion of Defendant Barton's SUMF asserted the following:

5. [The Bank] sold its rights in the Deed of Trust for the [P]roperty to Plaintiffs on or about May 11, 2012[.]

. . . .

8. [T]he Note Purchase Agreement states: "3.4 Loan Documents. To the best of Seller's knowledge based solely in the Stock Purchase Agreement and no other independent investigation, the documents, instruments and agreements listed on Schedule 1 hereto constitute all material documents, instruments, and agreements governing the repayment of the Loans, and such documents, instruments and agreements have not been modified except as referenced on Schedule 1. The Loan Documents do not secure any other loan that is currently outstanding with Seller[.]"

. . . .

10. On or about October 13, 2011, the Property was destroyed by fire[.]

---

[4] All rule references are to Missouri Court Rules (2021).
[5] To prevail on their breach of contract claim, Plaintiffs would have to prove "(1) the existence of a valid contract; (2) the defendants' obligation under the contract; (3) a breach by the defendants of that obligation; and (4) resulting damages." *C-H Bldg. Assocs., LLC v. Duffey*, 309 S.W.3d 897, 899 (Mo. App. W.D. 2010).

. . . .

12. Plaintiffs, and [the Bank], failed to notify [Defendant] Barton of the sale of the Note Purchase Agreement until the Amended Pleadings . . . were filed[.]

13. The Policy states "Assignment of [the Policy] shall not be valid except with the written consent of the Company[.]"

14. The Policy further states "Th[e P]olicy may not be assigned without "our" written consent[.]"

"Generally, an insurance policy cannot be assigned where an assignment is expressly prohibited by the terms of the policy, unless the insurance company assents to the assignment." *Smith v. R.B. Jones of St. Louis, Inc.*, 672 S.W.2d 185, 186 (Mo. App. E.D. 1984). An exception to that general rule exists when the sale or assignment, as here, takes place *after* the loss has already occurred. "As a general rule, an assignment made by the insured after the event has occurred on which liability under an insurance policy is predicated does not violate a policy provision prohibiting assignment of the policy or its benefits." *Magers v. Nat'l Life & Accident Ins. Co.*, 329 S.W.2d 752, 756 (Mo. banc 1959). The rationale behind this exception is that, at the time of the assignment, the insurer's liability has already become fixed. *Citicorp Indus. Credit, Inc. v. Fed. Ins. Co.*, 672 F.Supp. 1105, 1107 (N.D. Ill. 1987) (discussing the reasoning of the Supreme Court of Missouri's decision in *Magers*). Defendants have failed to make any legal or factual argument as to why this general exception should not apply in this case.

Defendant Barton's stated legal support for its motion for summary judgment – that Plaintiffs had assigned the Policy in violation of the Policy's terms – is insufficient on its face. Defendant Barton's SUMF establishes that the Policy was assigned after the

6

loss had already occurred. Thus, summary judgment for Defendant Barton did not "flow[] as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone*." *See **Hartwell***, 607 S.W.3d at 813.

Further, while the circuit court granted summary judgment in favor of Defendant Barton on the basis that "the 'Note Purchase Agreement' between [the Bank] and [Plaintiffs] did not assign any rights to the insurance proceeds from [the Policy,]" that assertion was not established by the uncontroverted material facts. Defendant Barton's SUMF established, at most, "[that] the documents, instruments and agreements listed on Schedule 1 [of the Note Purchase Agreement] . . . constitute all material documents, instruments and agreements *governing the repayment of the Loans*[.]" (Emphasis added.) The SUMF does not address whether the Policy proceeds from the loss of the Property were later assigned to Plaintiffs.[6]

Defendant Barton's SUMF fails to make a *prima facie* showing of a right to judgment as a matter of law. Because the motion fails for this reason alone, we need not address any other points related to Defendant Barton. *See **Hartwell***, 607 S.W.3d at 815.

The relevant uncontroverted material facts related to Defendant American Modern's motion for summary judgment are as follows:

> 3. [Defendant American Modern] issued [the Security Policy] to the Bank, which was in effect on October 13, 2011[.]
>
>     . . . .

---

[6] Even assuming, *arguendo*, that Defendant Barton's motion for summary judgment made a *prima facie* case of its right to judgment as a matter of law on the issue of the Note Purchase Agreement's failure to assign the Policy proceeds to Plaintiffs, Plaintiffs' responses created a genuine issue of material fact on that issue. Plaintiffs' responses cited to language in the Note Purchase Agreement that assigned to Plaintiffs "all rights accrued" under the Note Purchase Agreement, together with all "collateral instruments and/or other documents made or granted in favor of the Seller in connection with the loan[.]" See ***Maritz Holdings, Inc. v. Fed. Ins. Co.***, 298 S.W.3d 92, 101 (Mo. App. E.D. 2009) (stating that if it appears evident that the parties disagree on the meaning of an agreement, summary judgment should be denied).

5. The Note Purchase Agreement specifically lists and defines what is included in "Loan Documents" as "the Notes, the Deeds of Trust, the Security Agreements and the other loan documents and agreements which are to be sold and *assigned* to Purchaser hereunder and which are described on Schedule 1[.]"

6. The Note Purchase Agreement further states under section 3.4, subheading *Loan Documents*:  To the best of Seller's knowledge based solely in the Stock Purchase Agreement and no other independent investigation, the documents, instruments and agreements listed on Schedule 1 hereto constitute all material documents, instruments and agreements governing the repayment of the Loans, and such documents, instruments and agreements have not been modified except as referenced on Schedule 1.  The Loan Documents do not secure any other loan that is currently outstanding with Seller[.]

7. The loan documents listed under Schedule 1 in the Note Purchase Agreement do not include nor reference any insurance agreements or policies, more specifically it does not include [the Security Policy.][7]

Defendant American Modern moved for summary judgment on the basis that the Note Purchase Agreement did not transfer the Security Policy to Plaintiffs, leaving Defendant American Modern devoid of any obligation to cover Plaintiffs' loss.  In asserting that claim, Defendant American Modern relies on the same numbered paragraph as Defendant Barton, specifically, paragraph #6, which we earlier noted addresses only the terms governing the repayment of the loan issued by the Bank.

As we determined in addressing Defendant Barton's motion for summary judgment, which presented the same contractual language, the SUMF does not establish as a matter of law that the Note Purchase Agreement did not transfer to Plaintiffs – post-loss – the right to receive the proceeds from the Security Policy.

 [C]ourts reason that allowing an insured to assign the right to coverage (pre-loss) would force the insurer to protect an insured with whom it had not contracted–an insured who might present a greater level of risk than

---

[7] Plaintiffs subsequently admitted this statement, while disputing that it was a genuine issue of material fact, and denied "any implication that [the Note Purchase Agreement] does not assign [the] Bank's interest to [Plaintiffs.]"

the policyholder.  However, allowing an insured to assign its right to the proceeds of an insurance policy (post-loss) does not modify the insurer's risk.  The insurer's obligations are fixed at the time the loss occurs, and the insurer is obligated to cover the loss agreed to under the terms of the policy.  This obligation is not altered when the claimant is not the party who was originally insured.  After the loss, the anti-assignment clause serves only to limit the free assignability of claims, which is not favored by the law, and such restrictions on an insured's right to assign its proceeds are generally rendered void.  See Lee R. Russ & Thomas F. Segalla, *3 Couch on Insurance 3d,* § 35:7 (2005); Richard A. Lord, *29 Williston on Contracts* § 74:22 (4th ed.); 44 Am Jur.2d Insurance § 787.

***In re Katrina Canal Breaches Litig.***, 2010-1823 (La. 5/10/11); 63 So.3d 955, 961.

Defendants have failed to make any legal or factual argument as to why the post-loss exception should not apply in this case.

As Defendants' motions for summary judgment failed to demonstrate a *prima facie* right to judgment as a matter of law, points 1 and 4 are granted, and that conclusion moots Plaintiffs' additional points.  The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

9